IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ROBERT EARL NOBLE,<br><br>Plaintiff<br><br>v.<br><br>SCOTT W. BRADY, et al.,<br><br>Defendants | Case No. 1:19-cv-31<br><br>UNITED STATES MAGISTRATE JUDGE<br>RICHARD A. LANZILLO<br><br>MEMORANDUM OPINION AND<br>ORDER ON DEFENDANTS' MOTION<br>TO DISMISS [ECF No. 31] |

I.     Introduction

Plaintiff Robert Earl Noble, an inmate in the custody of the Erie County Prison, initiated this pro se action on February 11, 2019.  ECF No. 1.  In his original complaint, Noble asserted violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on his November 30, 2016 arrest and subsequent indictment for unlawful possession with intent to distribute crack cocaine.  ECF No. 3.  Noble named the following individuals as Defendants: United States Attorney Scott W. Brady, Assistant United States Attorney Marshall J. Piccinini, United States Federal Probation Officer Connie Dugan (collectively, the "Federal Defendants"), and City of Erie police officers Jason Triana, Michael Nolan, Steve Deluca, and Michael Chodubski (collectively, the "Police Defendants").[1]  *Id.*  Noble sought damages pursuant to 42 U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, and *Bivens v. Six Unknown FBI Agents*, 403 U.S. 338 (1971).  *Id.*

---

[1] On July 23, 2019, the Police Defendants filed a motion to dismiss the claims against them as frivolous.  ECF No. 16.  The Court granted that motion on March 6, 2020, after determining that Noble's claims against the Police Defendants were entirely duplicative of the prior civil action Noble filed against the same defendants at 1:18-cv-06. *See* ECF No. 56.

The Federal Defendants moved to dismiss all claims on November 19, 2019.  ECF No. 31.  After responding to that motion, *see* ECF No. 39, Noble filed an amended complaint on December 23, 2019, without seeking leave of court or obtaining written consent from the Defendants.  *See* ECF No. 43; Fed. R. Civ. P. 15(a)(2).[2]  In both his response brief and his proposed amendment, Noble consented to the dismissal of his FTCA claim, without prejudice, so that he could exhaust his administrative remedies with the appropriate federal agency.  ECF Nos. 31, 43.  *See also* 28 U.S.C. § 2675(a).  Noble also attempted to add a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.  The Federal Defendants responded by filing a motion to strike the amended complaint or, in the alternative, to dismiss the amended complaint for the same reasons set forth in their original motion to dismiss.  ECF No. 44.  Each of these motions is ripe for review.[3]

II.     Factual Background

The allegations in the original and amended complaint are nearly identical in most respects.  On or about November 30, 2016, Erie police officers arrested Noble pursuant to a warrant obtained by Officer Triana.  ECF No. 3 at ¶¶ 13-14.  A federal grand jury sitting in this District ultimately indicted Noble on one count of unlawful possession with intent to distribute twenty-eight (28) grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).  He pleaded not guilty and is currently incarcerated in the Erie County Prison awaiting trial at case number 1:17-cr-00005.

---

[2] Noble subsequently refiled that same document with exhibits on December 27, 2019.  ECF No. 45.  Each amended pleading was filed more than 21 days after Defendants' respective motions to dismiss.  *See* Fed. R. Civ. P. 15(a)(1)(b) (requiring an amendment filed in response to a Rule 12(b)(6) motion to be filed within 21 days after service of the motion).

[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

With respect to his arrest, Noble alleges that Officer Triana submitted a warrant application and affidavit of probable cause inaccurately associating him with a residence at 828 West 17th Street in Erie, Pennsylvania. ECF No. 3 ¶ 13. Noble contends that the search warrant application "include[d] a mix of misstatements and omissions of material facts" that "substantially mis[led] the magistrate judge in his determination of probable cause." *Id.* ¶ 17. Specifically, Noble avers that Triana forged or altered documents from the Erie Police Department's records to make it appear that Noble resided at the West 17th Street address where illegal substances were recovered. Triana also allegedly fabricated the existence of two prior controlled buys of narcotics. *Id. See also* ECF No. 45 ¶ 16. AUSA Piccinini, while "fully aware of the illegal and unlawful actions of Det. Triana," engaged in "'outrageous' government misconduct in a morbid attempt to assist and further the unlawful and illegal acts of Det. Triana" by intentionally and knowingly soliciting "perjured testimony that substantially influence[d] the grand jury's determination that probable cause existed to indict [Noble]." *Id.* ¶ 23. Based on these allegations, Noble asserts claims against Piccinini for false arrest, malicious prosecution, and false imprisonment. *Id.* ¶¶ 23-25. Noble also alleges that Piccinini violated the Eighth Amendment by using "false and fabricated and unlawfully obtained evidence" during Noble's detention hearing to persuade the magistrate judge to deny bail. *Id.* ¶ 26.

Regarding Brady, the United States Attorney for the Western District of Pennsylvania, Noble alleges only that he "fail[ed] to properly train, closely monitor, and/or intervene in the 'outrageous governmental misconduct' of his subordinates and the agencies that work closely and jointly in investigating, arresting, imprisoning, and prosecuting individuals." *Id.* ¶ 30. Noble notes that he wrote a letter to Brady on March 25, 2018, in which he complained of Piccinini's conduct but received no response. ECF No. 45 ¶ 19.

As to Dugan, a federal probation officer, Noble alleges only that she conspired with Piccinini to violated his rights by "improperly and against Federal Probationary Rules and Procedures allo[wing] the Plaintiff to change his homeplan residency, via phone, without any indicia of reliability verifying said action." ECF No. 3 ¶ 19.  Noble maintains that Dugan's conduct contributed to a "cruel conspiracy" to violate his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  ECF No. 45 ¶ 36.

III.    Standards of Review

A. Pro se litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997).  *See, e.g.,* *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

B.  Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.

2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV.     Analysis

Each of Noble's remaining claims is rooted in *Bivens v. Six Unknown FBI Agents*, 403 U.S. 388 (1971).  In *Bivens*, the United States Supreme Court, recognizing that Congress had created a cause of action for individuals whose constitutional rights were violated by state officials but had not created an analogous statue for federal officials, held that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (explaining *Bivens*, 403 U.S. 388).  To state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that a person acting under color of federal law caused the deprivation. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).  Additionally, the plaintiff must establish

that the constitutional deprivation falls within the limited range of *Bivens* claims already recognized by the United States Supreme Court. *Ziglar*, 137 S. Ct. at 1855. *See also Pauley on behalf of Asatru/Odinist Faith Community v. Samuels*, 2019 WL 4600195, at *5 (W.D. Pa. Sept. 23, 2019) (noting that courts should "exercise caution before extending the [*Bivens*] remedy to claims that are meaningfully different" than the three *Bivens* claims the Court has already recognized: *Bivens* (search and seizure), *Davis v. Passman*, 442 U.S. 228 (1979) (gender discrimination), and *Carlson v. Green*, 446 U.S. 14 (1980) (inadequate prison medical care)).

Here, Noble contends that Piccinini violated his Fourth Amendment right to be free from malicious prosecution, false arrest, and false imprisonment, as well as his Eighth Amendment right to be free from cruel and unusual punishment. ECF No. 3 ¶¶ 23-27. He alleges that Dugan "collu[ded]" with Piccinini and Triana "to violate [his] constitutionally protected Fourth, Fifth, Eighth, and Fourteenth Amendment rights," *id.* ¶ 28, and that Brady "fail[ed] to train, closely monitor, and/or intervene" in the misconduct of his subordinates. The Federal Defendants, in turn, contend that Noble's claims are barred by sovereign immunity, prosecutorial immunity, qualified immunity, lack of personal involvement, and failure to state a claim. Each of these defenses will be addressed in turn.

A. Official capacity claims

Noble purports to sue each Federal Defendant "individually and in their official capacities." ECF No. 3 at 1. However, "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 Fed. Appx. 515, 516 (3d Cir. 2008); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Since

no waiver applies, Noble's official capacity claims must be dismissed. *See Brooks v. Bledsoe*, 682 Fed. Appx. 164, 169 (3d Cir. 2017) ("To the extent that Brooks is suing the [federal] employees in their official capacities, his claim fails [because] *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Galette v. Marler*, 2020 WL 2571167, at *3 (E.D. Pa. May 21, 2020) (same).

B.  Personal involvement

Brady next contends that Noble has failed to allege any facts suggesting his participation in a constitutional violation.  It is axiomatic that constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct. *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable).  Whether proceeding under *Bivens*, § 1983, or both, a plaintiff cannot prevail unless he can demonstrate that the defendant played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009).  In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendant is a supervising official. *See, e.g., Rode*, 845 F.2d at 1207 (noting that liability for supervisory officials must still be based

on "personal involvement in the alleged wrongs"); *Iqbal*, 556 U.S. at 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Noble's claim against Brady consist of boilerplate allegations that he "adopted and maintains unconstitutional customs, practices, and procedures in the Western District of Pennsylvania" with respect to "training, professionalism, and integrity in the area of investigating, indicting, detaining, and the prosecuting of individual suspects." ECF No. 3 ¶ 20. In addition to being entirely conclusory, Noble's averments confirm that his claims against Brady are predicated solely on the theory of *respondeat superior*. *See, e.g., Iqbal*, 556 U.S. at 676; *Robinson*, 120 F.3d at 1293-95. Noble has not pleaded any facts suggesting Brady's direct involvement in a constitutional tort or implementation of a specific, identified custom, policy or practice that violated Noble's constitutional rights. In the absence of any such allegations,

Noble's claims against Brady must be dismissed for lack of personal involvement. *See, e.g.*, *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and . . . failed to help him" is insufficient to state a claim for relief); *Anson v. United States*, 2020 WL 2425780, at *4 (W.D. Pa. Apr. 6, 2020) (dismissing supervisory claims against federal prison warden for lack of personal involvement).

### C.  Prosecutorial immunity

Piccinini and Brady maintain that they are each entitled to "absolute immunity" from the defense of Noble's claims due to the doctrine of prosecutorial immunity. *Fogle v. Sokol*, 957 F.3d 148, 156 (3d Cir. 2020).  Absolute immunity bars federal claims against prosecutors for acts "intimately associated with the judicial phase of the criminal process, such as initiating a prosecution and . . . presenting the State's case." *Karkalas v. Marks*, 2019 WL 3492232, at *14 (E.D. Pa. July 31, 2019) (citations and quotations omitted).  By contrast, a prosecutor's "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Fogel*, 957 F.3d at 159 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

According to Noble, Piccinini violated his constitutional rights by presenting "perjured testimony" from Triana to the grand jury in order to obtain Noble's indictment and using "false and fabricated and unlawfully obtained evidence" during Noble's detention hearing to persuade the magistrate judge to deny bail.  ECF No. 3 ¶ 26.  Courts have routinely held that a prosecutor's solicitation and presentation of testimony to a judge or jury – even perjured testimony – is a quintessential advocatory act protected by absolute immunity. *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 485 (1991) (prosecutorial immunity applies to a prosecutor's "knowing

use of false testimony before the grand jury and at trial"); *Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989) (solicitation of false testimony for presentation to the grand jury fell within "the preparation necessary to present a case" and therefore enjoyed absolute immunity); *Fogle*, 957 F.3d at 160 (prosecutors are immune from claims arising from their conduct in initiating a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings") (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992)). Because each of the improper acts attributed to Piccinini occurred while he was serving as an advocate during a judicial proceeding, Piccinini is entitled to absolute immunity from the defense of Noble's claims.[4]

D.  Failure to state a claim

Finally, Noble asserts a conspiracy claim against Dugan, alleging that she colluded and conspired with Piccinini to violate his constitutional rights by supplying false information concerning Noble's residence.  ECF No. 3 ¶ 28.  Noble avers that Piccinini relied on the misinformation supplied by Dugan to establish probable cause for his arrest.

"The essence of a conspiracy is an agreement."  *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989).  To demonstrate the existence of a conspiracy under § 1983 or Bivens, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law."  *LeBlanc v. Stedman*, 483 Fed. Appx. 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).  "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism."

---

[4] It is impossible to determine whether Brady is also entitled to prosecutorial immunity given that, as noted above, there are no specific factual allegations against him in the complaint.

*Perez v. Gamez*, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013). Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 2013 WL 5656125, at *5 (M.D. Pa. Oct. 15, 2013). In other words, the plaintiff must "expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *See Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992)

Because direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Still, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A "bare assertion of conspiracy will not suffice." *Id.*

Here, Noble's allegations amount to nothing more than a bare assertion of conspiracy. His lone factual averment is that Dugan gave a "false and fabricated report to Defendant Piccinini that she gave plaintiff approval to change his home plan, via phone." ECF No. 3 ¶ 36. According to Noble, because this violated "federal probation protocol, rules, policy and/or procedures," it "evinces a collusion, on the part of Dugan, to violate plaintiff's constitutionally protected rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution – Thus, a cruel conspiracy." *Id.* However, he has not alleged any facts suggesting that Piccinini and Dugan communicated, consulted, or cooperated for the express purpose of jointly depriving him of his constitutional rights, much less reached an explicit or implicit agreement to do so. *See Flanagan*, 783 F. Supp. at 928. As such, Noble's conspiracy claim amounts to nothing more than "mere conjecture and bare speculation, which is insufficient to

state a claim." *Islaam v. Kubicki*, 2020 WL 1663344, at *7 (M.D. Pa. Apr. 3, 2020).  Dismissal is appropriate.

        E.  Leave to amend

        The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  This instruction is equally applicable to pro se litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

        In the instant case, Noble has already submitted a proposed amended complaint in response to the specific arguments raised in the Federal Defendants' motion to dismiss.  After carefully reviewing the proposed amendment, the Court observes that Noble's claims against Brady and Dugan have not changed from his original complaint.  Because no additional facts are presented concerning either Brady or Dugan, the proposed amendment is futile as to those parties.

        With respect to Piccinini, Noble offers some additional details concerning his accusation that Piccinini presented false evidence in Noble's underlying criminal proceeding.  *See* ECF No. 43 ¶ 16.  Noble appears to contend that Triana altered records in order to link Noble with the address at West 17th Street and that Piccinini relied on those fabricated records in court to persuade United States District Judge David S. Cercone to reject Noble's request for a *Franks* hearing.  *See* ECF No. 43 ¶ 16, 31; *see also* 1:17-cr-05, at ECF No. 91.  Noble also avers, in conclusory fashion, that Triana destroyed unidentified exculpatory evidence and that Piccinini had "constructive knowledge" of Triana's actions and failed to prevent them.  *Id.* ¶ 34.  None of these facts corrects the deficiencies identified above; rather, they simply confirm that the

misconduct attributed to Piccinini occurred while he was serving as an advocate for the prosecution during a judicial hearing.

Noble also attempts to add a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO" Act), 18 U.S.C. § 1961, et. seq.  He contends that the Federal Defendants engaged in a pattern of "obstructing justice, fraud, suborning false perjured testimony, [and] falsifying and tampering with documents, records, and evidence in a federal prosecution."  ECF No. 43 ¶ 38.  Collectively, he maintains that these activities "evince[] the aforenamed defendants' participation in a Racketeer Influenced Corrupt Organization proscribed by Federal law under Civil RICO."  *Id.*

Section 1962(c) of the RICO statute makes it unlawful for an individual, who is employed by or associated with an enterprise that is engaged in interstate or foreign commerce, to conduct or participate in the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c).  In order to have standing to bring a claim under § 1962, a plaintiff must show that he suffered an injury to his business or property, and that his injury was proximately caused by the defendants' violation of § 1962.  *See* 18 U.S.C. § 1964(c); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).  An injury in this context "requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest."  *Maio*, 221 F.3d at 483 (internal quotations omitted).  Assuming the plaintiff has standing, he must then set forth allegations showing: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004)).  "Racketeering activity" is defined in § 1961, which provides an exclusive list of offenses that constitute predicate acts of racketeering activity.  *See* § 1961; *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999), overruled on other

14

grounds by *Rotella v. Wood*, 528 U.S. 549 (2000) ("RICO's list of acts constituting predicate acts of racketeering activity is exhaustive").  Notably, none of the activities alleged in Noble's proposed amendment – falsifying documents, tampering with evidence, suborning false testimony, etc. – appears on § 1961's exhaustive list.

On balance, the Court rejects Noble's proposed amendment as futile.[5]  His claims against Brady and Dugan are identical to those which have already been deemed factually and legally deficient.  While Noble has supplied some additional facts in support of his claims against Piccinini, it remains clear that those claims all relate to actions undertaken by Piccinini while acting as an advocate in front of a federal judge during a judicial proceeding.  Such actions remain protected by absolute prosecutorial immunity.  Finally, Noble has failed to state a RICO claim because he has not alleged that he suffered an injury to business or property or that any Federal Defendant engaged in racketeering activity as defined in § 1961.  For each of these reasons, his proposed amendment fails to state a claim upon which relief can be granted.[6]

F.   Motion for reconsideration

In addition to opposing dismissal of the Federal Defendants, Noble has filed a motion requesting that the Court reconsider its prior order dismissing the Police Defendants pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  ECF No. 61.  The purpose of such a motion is "to correct manifest errors of law or fact or to present newly discovered evidence."  *Max's*

---

[5] Defendants' motion to strike [ECF No. 46] is, accordingly, denied as moot.

[6] In addition to the deficiencies highlighted above, many of Noble's Fourth Amendment claims challenge conduct that he is simultaneously attacking in his pending criminal case.  It is well-settled that a pre-trial detainee's "challenge to the conduct of law enforcement officers in connection with his arrest or the validity of the charges against him must be addressed in an appropriate pretrial motion."  *Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 245 (3d Cir. 2018).  The Court notes that Noble has several pending motions in the underlying criminal action challenging the validity of his arrest on various grounds (including the search of his purported residence).  *See* 1:17-cr-0005 at ECF Nos. 53, 78, 79.

*Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). As such, the movant must rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made, *Williams v. Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998), or to relitigate issues already resolved by the court and/or advance additional arguments which could have been made by the movant before judgment. *Reich v. Compton*, 834 F.Supp. 753, 755 (E.D. Pa. 1993), *aff'd in part*, *rev'd in part*, 57 F.3d 270 (3d Cir. 1995). Thus, litigants must "evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Waye v. First Citizen's Nat'l Bank*, 846 F.Supp. 310, 314 n.3 (M.D. Pa. 1994) (internal quotation omitted).

In its prior order, the Court dismissed Noble's claims against Triana and the other Police Defendants because Noble had previously filed another civil rights action raising nearly identical claims against those same officers. *See* 1:18-cv-06. That action is currently stayed pending the resolution of Noble's criminal proceedings. Noble disputes that the claims in the two actions are identical, noting that the claims against Triana in the instant action are broader and encompass a larger time span than those at issue in the first action. Noble has not identified any new facts or arguments that were not before the Court at the time that it rendered its opinion; rather, he simply conveys his dissatisfaction with the Court's conclusion. Courts routinely reject requests for reconsideration based on mere disagreements between a litigant and the court. *Williams*, 32 F.Supp.2d at 238 (motions for reconsideration should not be used "to retry issues the court already decided"); *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) ("Such motions are not to

be used as an opportunity to relitigate the case."). Moreover, the Court's prior ruling is neither factually erroneous nor contrary to law. For each of these reasons, Noble's motion for reconsideration must be denied.

V.      Conclusion

For the reasons stated herein, the Federal Defendants' motion to dismiss is GRANTED. Moreover, because Noble has already submitted a proposed amended complaint that failed to correct the deficiencies highlighted in his original pleading, further leave to amend should be denied as futile. *Baker v. Moon Area Sch. Dist.*, 2018 WL 40571719, at *8 (W.D. Pa. Aug. 27, 2018) (quoting *Taylor v. Pilewski*, 2008 WL 4861446, at *3 (W.D. Pa. Nov. 7, 2008)). The Clerk is directed to mark this case closed.

IT IS SO ORDERED.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: July 1, 2020

17